The argument is United States v. Michael Eckis. Very well. Ms. Healy, we'll hear from you first. Good morning. May it please the Court, my name is Megan Healy on behalf of the United States. The United States respectfully asks this Court to vacate the sentence imposed and to remand for resentencing. The sentencing record reflects the District Court considered factors other than Mr. Eckis' substantial assistance when sentencing him below the mandatory minimum in this case. Namely, the record shows the District Court considered his success on release, which is an impermissible basis to reduce the sentence below a mandatory minimum under 18 U.S.C. section 3553e. Ms. Healy, can I ask you a question about the standard of review? Yes. As I read your brief, you have disavowed any substantive reasonableness argument, arguing it's a legal question. But as I read the transcript, I don't see an objection as you have framed it on appeal. I see a sort of a warning to the judge, as you know, Judge, you can't take into consideration the factors, the type of factors that you've talked about, and the judge says, yes, I understand. And then the later objection is, well, we want a larger objection to the extent of this variance. So is this plain error? It is not, Your Honor, and this is why. On page 31 of the second sentencing transcript, the prosecutor stated that based on the reason previously stated, which is referring back to page 8 of the sentencing transcript, where he stated, you can only consider the factors under 3553e. You can only consider substantial assistance. That's the reference back to that law. Did you say 21, counsel? What page? Page 31 of the second sentencing transcript. 31 of the second. Okay. Go ahead. Proceed. And he's referring back to his previous statement on page 8, in which he stated the law, that the Court could only consider substantial assistance and not any of the A factors. Could the district court also have heard that as for the reasons stated before about our characterization, meaning the government's characterization of the usefulness and beneficial nature of the cooperation? In other words, it seems like counsel said a number of things in support of his position on what the departure should be. So how would the district court be in a position to know that that was what counsel was referring to? Well, the United States had stated a number of times that we could only consider the value of the assistance and nothing else. And when you read the reference back to for the reasons previously stated, with his next sentence object to the degree of variance based on the value of the substantial assistance, in that substantial assistance did not account for the entirety of the variance. And a couple of lines after that in the record on page 31, he again says based on the value of the assistance, meaning that the value of the assistance, as the district court characterized it, did not account for the entirety of the reduction here. I would also point, Your Honor, to this Court's opinion in 2009 in Salas-Barraza. In that case, this Court characterized the government's objection as one to the degree of the variance, and which is very similar to the objection here, although I think the objection here is more specific as to what we are objecting to. And in that case, based on our objection to the degree of the variance, with the same arguments on the appeal, this Court did apply de novo review. We think it's appropriate to do the same here. Well, counsel, what about the judge's repeated statements? I'm fully cognizant, I'm quoting. I'm on page 21, and it's June 13. I don't know, first, second, whatever. Yep. Fully cognizant of the fact I'm not allowed to consider 35 and determine false below mentor minimum. And that's not an isolated statement. It is not. There are many times that we take what the judge says about I'd give the same sentence regardless of the guidelines, take the district court and affirm and give people very long sentences based on that simple statement by the district court. Yes, Your Honor. So why don't we believe what the district judge says here? Your Honor is absolutely correct. The district judge stated that it knew the law. But the sentencing record shows that it stated knowledge of the law did not align with its application of that law here for two reasons. Now, wait, wait. Are you saying the judge said this knowledge didn't align, or is this your argument? No, that's my argument. Okay. Proceed. I didn't get it. Go ahead. I do now. Okay. First, this is how the record shows that. A good faith examination of the sentencing record at the whole focused particularly on the judge's statements at the first sentencing hearing show that the district court considered factors outside of cooperation when it told Mr. Eckes it would give him a time-served sentence. This is not one of those cases where a litigant comes to this court and asks the court to read between the lines as to what is going on here. The district court was upfront and explicit about its intent to give Mr. Eckes, a promise to give Mr. Eckes a time-served sentence based on his success to release to that point and on his anticipated continuance of that successive release until the next sentencing hearing around six months down the road. Tell me how long the delays were because it was also sentencing was delayed, the hearings. Yes. How many were there? Because I was confused looking at this. Go ahead. Two sentencing hearings. The first one was October 12th, 2021. That is when the district court, sua sponte, continued the sentencing for six months with a promise of a time-served sentence if Mr. Eckes continued to do well on release. The second sentencing hearing was May 24th, 2022, which was a little about seven months later. Did the government object at the end when at the first end of the first sentencing hearing says, as you've described, was there any objection to that? The government did not object, Your Honor. Does that affect any of our review? It does not, Your Honor. At that point, the district court had not made any sort of judgment or sentencing pronouncement, had not pronounced sentence. It was not the appropriate time for the United States to object at that point. It does not change the standard of review. The judge was telegraphing what he was doing, though, right, even then? He was. It was a promise that if you continue to do well, it's contingent on the continued success on release. And so it was the prosecutor did not object, and it's our position we did not have to object at that time. We objected once the sentence was imposed. Wouldn't it have made sense, though, if you thought that that was an improper factor for the court to consider, as you've argued here today and in your brief, that there'd be no reason for the continuance? And so the prudent thing would be to signal to the district court, well, there's no reason for that because there's nothing that he can do between now and then short of additional cooperation that would affect your decision. I think the United States had stated what the accurate law was at the first sentencing hearing, and would it have been belt and suspenders? Perhaps. But it wasn't necessary. The United States then came into the second sentencing hearing and made it very explicitly clear, this is the law, this is what can be considered. We framed at both sentencing hearings, framed our recommendations solely through the 3553E lens as to any reduction below the mandatory minimum. And when the sentence was imposed, the prosecutor objected at the proper time. Now, did the judge say a couple times if I'd sentenced you 6 months ago or a year ago or something like that, in fact, I would have given you 5 to 7 years? That is correct, Your Honor. Was the cooperation completed before the time frame to which he was referring? Yes, Your Honor. In the first sentencing transcript, he made a comment that he would have, had he seen him a year ago, he would have given him a lengthy sentence without even losing an ounce of sleep. The second sentencing hearing would have done it without hesitation when he was pronouncing sentence. The time frames of both of these, the cooperation was complete. So when he said, had I seen you a year ago? How far in advance of the hearings was the cooperation complete? Mr. Eckes gave a statement to law enforcement upon arrest in January 2022. Thank you. And then the record shows that the proffer occurred in late 2020 or, excuse me, late July 2020, according to Mr. Quick's statements in the record. Indictment was September 2020. And cooperation was complete in July 2020 when he proffered. There's no further cooperation after that. Why was he on release at all? Why was the man even released? Did the government agree to that? I think the government did agree to that. I mean, he committed this major drug offense while he was on state probation. And the government agreed he could go on pretrial release. I think that Mr. Quick had made a motion for release. And the United States asked, if I'm remembering the record correctly, the United States asked for placement at a halfway house. Okay. And my other question was, why did the government agree to the guideline range that was two levels lower than the actual drug quantity? Yes, Your Honor, in my review of the record, I don't see an answer in the record as to how the parties negotiated that quantity. I caught the same. And I think the prosecutor who covered the second sentencing hearing acknowledged as much, that the PSR quantity was actually correct based on the discovery and based on the package that was found. I don't understand why the government agreed to a phony quantity. And, again, Your Honor – Is that normal practice in North Dakota to negotiate levels that don't match the facts? Not based on my understanding of how the cases align. Again, the record doesn't show how the parties – That's a different thing. I'm wondering if it's normal practice to just agree to artificial guideline rate, artificial facts. Your Honor, that's not my understanding of the practice. Okay. That's all I wanted to know. Thank you. I see I'm out of time. Thank you very much. Very well.  Mr. Quick, we'll hear from you. Good morning. May it please the Court. Good morning. Ms. Keeley. There's a button if you want to raise the microphone. Sure. The button on the side. Thank you. It's usually pretty low. It's in the middle. Oh, I'm sorry. It's in the middle. I'll be okay here. My name is Robert Quick. I represent Mr. Eckes in this case. I represented him from the beginning of this case. I ask this Court to affirm the sentence. If the Court would like to inquire me of any questions regarding – Why should we affirm when the judge said that he would have sentenced him to prison but for his long work record at the pizza joint? Well, I don't think the reason Judge Hovland sentenced him to time served was because of the job at A&B Pizza. I think the reason Judge Hovland sentenced him to time served – They're having trouble getting employees there. That was discussed on the record, correct? My favorite pizza joint, and you're working there, and you've done a good job. I'm going to see how you do it for another six months, and we'll let you go. It's a good question and a valid question. The reason I think the Court was bringing that up was to compliment Mr. Eckes on the good work that he had done. To answer an earlier question regarding the – when was cooperation done? Well, the government wants to say that the cooperation is done as soon as that proper interview takes place. And in reality, that's not the case. The plea agreement supplement actually states that the defendant is agreeing and understanding that the United States retains discretion, and the defendant agrees and understands that a key principle in providing substantial assistance is the United States maintaining the credibility of cooperating witnesses. And it goes into – discusses a bunch of the different factors. And so – Well, but your man didn't testify. He didn't, but – So it was a done deal once he – The person that he did give a massive amount of information did ultimately resolve the case without needing – And like I said, the added credibility of how he's doing on pretrial release is very relevant to how the government is prosecuting these other cases, how they are leaning on other defendants to sign plea agreements and not tie up the Court with trials. And so – Did the judge say anything about how this was such extraordinarily significant cooperation that it would justify a 92 percent reduction? Did he say anything about the cooperation or the value of the assistance? The value of the assistance was basically – it was Mr. Eckes' involvement led to several arrests, lots of drugs getting off of the street, and it was immediate. No, I understand what the facts were. I'm saying when the judge was explaining the sentence, was there any explanation as to why the cooperation would justify this degree of departure? Or was the discussion all about the work record and the – It was about all of the above, but at the same time, the discussion was that the Court disagreed with the government's assessment of the cooperation and the level of the assistance. And so that was where the Court differed from the government and – Well, that's kind of a passing comment, don't you think, at the May hearing? It was. Yeah, it's kind of a passing comment on the level of cooperation. Then we're immediately on to all being sober and the employment. I'm looking at the transcript, I think, of that hearing. Correct. And so it's kind of a passing comment or tip of the hat. It may be, Your Honor. At the same time, that's what the Court on the record stated, that he was basing his judgment on and the sentence on. And I think – No, he didn't say that, really. He said he was aware of what the law was. He never said – He said he disagreed with the government's assessment of Mr. Eckes' cooperation. And based on that disagreement of the government's previous assessment, he was entering the sentence of time served for Mr. Eckes. Differently is the strongest word he uses, even in passing, right? Yes, it is. What page are you referring to when you say – I don't have the page. Page 21. I think he said that I disagree and that's why I'm giving time served. No, but I see the level of cooperation differently than the Federal Government. But I'm also cognizant. Yeah. And that is basically the crux of – What about the statement of reasons? Did you look at that? He says he finds the sentence is sufficient but not greater than necessary under the circumstances, after consideration of all the factors set forth at 5K1.1. But sufficient but not greater than necessary, as you know, is 3553A language. The court is correct. I don't think that that invalidates the rest of the argument. A lot of the, I guess, words that the court is using is familiar terminology and a lot of it was positive admonition for Mr. Eckes and relating the sentence to him at the time. Can you help me understand your view of the objection that was made at the end of the sentencing? Give me a sense of the hearing itself. Ms. Healy, her position is that when counsel objected to the degree of the departure, again, based on the value of the assistance, in the course of the sentencing, is that sort of what they were talking about, the other factors? Or were we talking about the IC, the value of the cooperation differently? Or is it just unclear? I think it probably is unclear. At the time that the objection was made, it was more so I object to the sentence being as low as it is, as opposed to an objection based solely on the level of cooperation, is my recollection. Is this like a procedure in State court in North Dakota, this six-month continued sentencing and all that? It's not. Thank you, because some States have similar. But go ahead. It has been used often at times. I think usually when 3553A factors are able to be determined. My argument is that although the court cannot rely on 3553A factors and has to deem to like that rule. What's that? The judge seemed to comment that he wasn't sure that was good law, but he was cognizant of it. Yes. Is that right? That sounds accurate, based on my recollection. Go ahead. What were you going to say about it? His argument and his recollection was, I suppose it was based on the pause. That has happened from time to time, but not all that often, unless there's potential for the defendant to still testify and willingness to cooperate, staying in contact with the government, making sure that there's no other violations on release, and which goes to the credibility of the witness, which goes to the level of cooperation. It wasn't for that reason, was it? This was to see if he stays on the straight and narrow, I think were the words. I believe the other co-defendant's case was yet to be fully resolved, but that is not what the court put on the record. So I still think it was relevant. Court, would you have any other questions? Otherwise, I would waive the remaining of my time. Very well. We thank you for your time. Thank you. Ms. Healy, we'll give you one minute for rebuttal, since we've used up all your time. First round. Thank you for that, Judge. I'd like to just touch on two things very briefly. I'd just like to note that the defendant in his response brief did not argue for plain error review. And secondly, the defendant noted as to the credibility. Mr. Quick referenced the credibility issue in the agreement supplement. This Court, in its Massey opinion from 2020, noted that it was questionable if personal characteristics even relate to substantial assistance. But even if it did, there were no findings by the district court in this case relating Mr. Eckes' success on release to his substantial assistance and suggesting that his success would make him a better witness. And as Judge Carlson noted, he did not testify in this case. Counsel, a quick question. If Mr. Eckes had come back after the continuance, that six-month continuance, and had messed up, had not done well, maybe not a violation of the law, but had just not quite performed as well in his community as he ended up doing, I take it the government would not have altered its 40 percent reduction request? I believe that's correct, Your Honor, because his cooperation was complete at that time. So thank you very much for the time this morning. Now, whether the person against whom he cooperated ended up pleading guilty, is that what happened? That's correct. She did. Or she did. Yes. And she received a 72-month sentence. She was sentenced approximately a week after the first sentencing hearing in this case. So she pleaded guilty before the first sentencing hearing? Or was it a combined? No, I think she did plead guilty before the first sentencing hearing. That's my understanding, because I believe she was sentenced, I think it was October 19th, 2021. That's my recollection from the record. Is her name in the record? Her name is Terry Yarnall, and I do have the date. What's the last name? Y-A-R. Oh, Yarnall. Yeah, that's in the record. That was the person who got the 2.1-kilogram package that was counted as less than 1.5 kilos. It was actually counted as the 2.2 for her sentencing guidelines. But for this guy, it was counted as 1. That's correct, Your Honor. And the judgment there was issued on October 25th, 2021. So I assume that she was sentenced about that date. So she got the whole quantity, and this guy got a discount, apparently. That is what the record reflects, Your Honor. Okay. Thank you very much. Very well. Thank you for your arguments. The case is submitted. Mr. Quick, the Court notes that you were appointed under the Criminal Justice Act, and the Court appreciates your willingness to accept the assignment. Thank you to both counsel. The case is submitted, and the Court will file a decision in due course. Counselor.